UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

In Re:                                    §
                                          §
AUSTIN FULL GOSPEL HOLY TEMPLE,           §            Case No. 10-13381-cag
                                          §                 (Chapter 11)
        Debtor                            §
                                          §


**<u>PLAN OF REORGANIZATION AND SUPPORTING DISCLOSURE
FOR A SMALL BUSINESS CASE DATED AUGUST 23, 2011</u>**


Barbara M. Barron
Stephen W. Sather
**BARRON & NEWBURGER, P.C.**
1212 Guadalupe, Suite 104
Austin, Texas  78701
(512) 476-9103
(512) 476-9253 (Facsimile)

ATTORNEYS FOR DEBTOR-IN-POSSESSION

# TABLE OF CONTENTS

ARTICLE I - DEFINITIONS AND USE OF TERMS ......................................................................................... 2
ARTICLE II - CONCEPT OF PLAN .......................................................................................................... 6
ARTICLE III - PROVISIONS APPLICABLE TO ALL CLAIMS ..................................................................... 7
ARTICLE IV - CLASSIFICATION AND TREATMENT OF CLASSES UNDER THE PLAN ....................... 8
ARTICLE V - MEANS FOR IMPLEMENTATION OF PLAN ....................................................................... 11
ARTICLE VI - TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................... 11
ARTICLE VII - PROVISIONS FOR THE RETENTION, ENFORCEMENT, SETTLEMENT, OR
ADJUSTMENT OF CLAIMS BELONGING TO THE DEBTOR AND THE ESTATE INCLUDING
PREFERENCES AND CONVEYANCES ....................................................................................................... 12
ARTICLE VIII - EFFECT OF CONFIRMATION ....................................................................................... 13
ARTICLE IX - MODIFICATION OF PLAN ............................................................................................... 13
ARTICLE X - POST-CONFIRMATION PROCEDURE ................................................................................ 14
ARTICLE XI - DEFAULT AND OTHER RELATED PROVISIONS ............................................................. 14
ARTICLE XII - RETENTION OF JURISDICTION ..................................................................................... 15
ARTICLE XIII - MISCELLANEOUS PROVISIONS ................................................................................... 16
ARTICLE XIV - SUPPORTING DISCLOSURE - GENERAL ...................................................................... 18
ARTICLE XV - REPRESENTATIONS ....................................................................................................... 24
ARTICLE XVI - INFORMATION CONCERNING THE DEBTOR ............................................................... 25
ARTICLE XVII – FINANCIAL RESULTS ................................................................................................. 27
ARTICLE XVIII - ANALYSIS AND VALUATION OF PROPERTY .............................................................. 30
ARTICLE XIX - FEASIBILITY OF THE PLAN AND RISK TO CREDITORS ............................................. 31
ARTICLE XX - ALTERNATIVES TO DEBTOR'S PLAN ............................................................................ 31
ARTICLE XXI - RELATIONSHIP OF DEBTOR WITH AFFILIATES .......................................................... 31
ARTICLE XXII - TAX CONSEQUENCES .................................................................................................. 32
ARTICLE XXIII - PENDING AND POTENTIAL LITIGATION ................................................................... 32
ARTICLE XXIV - SOLICITATION OF VOTES .......................................................................................... 32

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| AUSTIN FULL GOSPEL HOLY TEMPLE, | § | Case No. 10-13381-cag |
| | § | (Chapter 11) |
| Debtor | § | |
| | § | |

## MODIFIED PLAN OF REORGANIZATION AND SUPPORTING DISCLOSURE FOR A SMALL BUSINESS CASE DATED AUGUST 23, 2011

**Austin Full Gospel Holy Temple** ("Debtor" or "AFGHT") proposes the following Plan of Reorganization ("Plan") and Supporting Disclosure for a Small Business Case Dated August  , 2011 ("Plan"), pursuant to chapter 11, title 11, United States Code ("Bankruptcy Code" or "Code") on behalf of the Debtor.  This is a small business case as defined by 11 U.S.C. §§ 101(51C) and (51D) because the Debtor was engaged in a commercial or business activity that had aggregate non-contingent liquidated secured and unsecured debts as of the date the case was filed ("Petition Date") or the Order for Relief was entered in an amount less than $2,190,000 (with no exceptions that apply in this case).   Debtor shall file periodic financial reports with the Court as required by the Bankruptcy Code covering Debtor's progress in repaying its creditors. These reports shall be available on the Court's PACER site at www.txwb.uscourts.gov using Debtor's name and/or case number as referenced above.

THIS IS A SMALL BUSINESS CASE AND DEBTOR IS SEEKING TO HAVE THE COURT DETERMINE THAT THE PLAN ITSELF PROVIDES ADEQUATE INFORMATION AND A SEPARATE DISCLOSURE STATEMENT IS NOT NECESSARY.  11 U.S.C. § 1125(f).  THE COURT MAY CONDITIONALLY APPROVE THE DISCLOSURES CONTAINED IN THIS PLAN SUBJECT TO FINAL APPROVAL AFTER NOTICE AND HEARING. DEBTOR WILL REQUEST CONDITIONAL APPROVAL AND THAT THE HEARING ON THE DISCLOSURES BE COMBINED WITH THE HEARING ON CONFIRMATION OF ITS PLAN.  11 U.S.C. §§ 1125(f)(3)(A) and (C).

ACCEPTANCES AND REJECTIONS WILL BE SOLICITED BASED ON A CONDITIONALLY APPROVED DISCLOSURE WHEREIN DEBTOR PROVIDES ADEQUATE INFORMATION TO EACH HOLDER OF A CLAIM OR INTEREST THAT IS SOLICITED.  THIS DOCUMENT CONTAINING THE CONDITIONALLY APPROVED DISCLOSURES SHALL BE SERVED NOT LATER THAN TWENTY-FIVE (25) DAYS BEFORE THE DATE OF THE HEARING ON CONFIRMATION OF THE PLAN.  11 U.S.C. §§ 1125(f)(3)(B).

IN A SMALL BUSINESS CASE THE COURT SHALL CONFIRM A PLAN THAT COMPLIES WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE AND THAT IS FILED IN ACCORDANCE WITH 11 U.S.C. § 1125(e) NOT LATER THAN FORTY-FIVE (45) DAYS AFTER THE PLAN IS FILED UNLESS THE TIME FOR CONFIRMATION IS EXTENDED IN ACCORDANCE WITH 11 U.S.C.  11 U.S.C. § 1125(e)(3).

## ARTICLE I
### DEFINITIONS AND USE OF TERMS

1.01    **Defined Terms.**  Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this Section 1.01.

1.01.01    **Administrative Expense Claim** means an administrative expense or Claim described in 11 U.S.C. § 503 and entitled to administrative priority pursuant to 11 U.S.C. § 507(a)(1), including but not limited to Claims for compensation of professionals made pursuant to 11 U.S.C. §§ 330 and 331 which arose on and after the Petition Date.

1.01.02    **Administrative Tax Claim** means an Unsecured Claim by a governmental unit for taxes (including interest or penalties related to such taxes) for any tax year or period, all or a portion of which occurs or falls within the period from and including the Petition Date through the Effective Date.

1.01.03    **Allowed Claim** means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that (i) a proof of Claim, proof of Interest, or request for payment was timely filed or, with leave of the Bankruptcy Court, late filed, and as to which no objection has been timely filed or, if filed, is allowed by a Final Order, unless otherwise provided in this Plan or (ii) the Claim is scheduled and not listed as disputed, contingent or unliquidated, and to which no objection has been timely filed or, if filed, is allowed by a Final Order.

1.01.04    **Allowed Secured Claim** means an Allowed Claim secured by a lien, security interest or other charge or interest in property in which the Debtor has an interest, to the extent of the value thereof as determined in accordance with 11 U.S.C. § 506(a).

1.01.05    **Bankruptcy Code** or **Code** means the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

1.01.06    **Bankruptcy Court** means the United States Bankruptcy Court for the Western District of Texas, or such other Court that may have jurisdiction with respect to Debtor's chapter 11 case, including the United States District Court for the Western District of Texas to the extent reference of the chapter 11 Case is withdrawn.

1.01.07    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended, promulgated under 28 U.S.C. § 2075, and the Local Rules of the Bankruptcy Court, as applicable from time to time to the Debtor's chapter 11 Case.

1.01.08 **Bar Date** means the date subsequent to which a proof of pre-petition Claim may not timely be filed or the date by which proofs of claims held by governmental agencies must be filed.

1.01.09 **Business Day** means any day except Saturday, Sunday or any other day on which commercial banks in Austin, Texas, are authorized by law to be closed for business.

1.01.10 **Case** means this chapter 11 bankruptcy case in this Bankruptcy Court.

1.01.11 **Claim** means (i) any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.01.12 **Claimant** means any person or entity having or asserting a Claim in this case.

1.01.13 **Class** or **Classes** mean all of the holders of Claims or Interests that the Debtor has designated pursuant to 11 U.S.C. § 1123(a)(1) as having substantially similar characteristics as described in Article IV of this Plan.

1.01.14 **Confirmation** means the entry by the Bankruptcy Court of a Confirmation Order confirming this Plan.

1.01.15 **Confirmation Date** means the date on which the Confirmation Order is entered.

1.01.16 **Confirmation Order** means the Order of the Court confirming the Plan pursuant to 11 U.S.C. § 1129.

1.01.17 **Contested** when used with respect to a Claim means a Claim against the Debtor that (a) is listed in the Debtor's Schedules of Assets and Liabilities as disputed, contingent or unliquidated; (b) is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (c) has had or is subject to an objection being timely filed and has not been denied by Final Order. To the extent an objection related to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the Objection.

1.01.18 **Creditor** shall have the meaning specified by 11 U.S.C. § 101(9) of the Code.

1.01.19 **Creditor Default** means any actions taken by a creditor of the Debtor in

violation of this Plan.

1.01.20 **Cure Claim** means the amount necessary to cure any default or arrearage, together with the amount necessary to compensate for damages suffered as a result of such default or arrearage, on an unexpired lease or executory contract which has been assumed pursuant to 11 U.S.C. § 365.

1.01.21 **Debtor** means Austin Full Gospel Holy Temple, Debtor in the above-captioned chapter 11 Case.

1.01.22 **Disputed Claim** means any Claim as to which the Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by Final Order.

1.01.23 **Effective Date** means the first day of the first full month after the Confirmation Order becomes a Final Order.

1.01.24 **Estate** means the estate created pursuant to 11 U.S.C. § 541 with respect to the Debtor.

1.01.25 **Equity Interest** means an equity security, as defined in 11 U.S.C. § 101(16), including but not limited to all common stock, preferred stock, stock options and warrants, all rights associated therewith, and all Claims arising from or relating to such Equity Interest, including but not limited to Claims for rescission.

1.01.26 **Fee Claim** means a Claim under 11 U.S.C. §§ 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in the Debtor's Case.

1.01.27 **Filed** means delivered to the Clerk of the Bankruptcy Court.

1.01.28 **Final Order** means an Order or judgment entered by the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties as to which the time to appeal has expired and as to which a stay pending appeal has not been granted.

1.01.29 **ECCU** means Evangelical Christian Credit Union, the secured creditor upon 4312 Gillis St., Austin, TX property.

1.01.30 **General Unsecured Claim** means an Unsecured Claim that is not entitled to priority under 11 U.S.C. § 507(a).

1.01.31 **Impaired** means the treatment of an Allowed Claim pursuant to the Plan *unless,* with respect to such Claim, either (a) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder of such Claim or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, the Debtor (i) cures any

4

default that occurred before or after the commencement of the Case on the Petition Date, other than default of the kind specified in 11 U.S.C. § 365(b)(2), (ii) reinstates the maturity of such Claim as such maturity existed before such default, (iii) compensates the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law, and (iv) does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim; or (c) the Plan provides that on the Effective Date the holder of such claim receives, on account of such Claim, cash equal to the Allowed Amount of such Claim.

1.01.32    **Lien** shall mean a contractual or statutory lien against an interest of the Debtor in real or personal property.

1.01.33    **Market Rate of Interest** means an interest rate sufficient to provide the present value of a claim pursuant to 11 U.S.C. §§ 1129(a)(9) or 1129(b) as may be appropriate. A Market Rate of Interest shall be 4.5% unless the parties agree on another rate or the Court determines otherwise with regard to a specific Class of Claims.

1.01.34    **AFGHT** means Austin Full Gospel Holy Temple, the Debtor and Debtor-in-Possession in the above-captioned case number 10-13381.

1.01.35    **Oversecured Claim** means a Claim which is secured by property which is valued at more than the amount of the Claim. An Oversecured Claim shall be entitled to receive post-petition interest at the non-default contract rate and may also receive post-petition fees and costs if authorized by a contract.

1.01.36    **Person** means an individual, partnership, or corporation, but does not include a governmental unit unless the government unit acquires an asset as a result of operation of a loan guarantee agreement, or as receiver or liquidating agent, in which case such governmental unit shall be considered a person for purposes of 11 U.S.C. § 1102 Code.

1.01.37    **Petition Date** means December 6, 2010, the date on which the Debtor filed his petition for relief in this Case.

1.01.38    **Plan** means this Plan of Reorganization, as it may be amended, modified, or supplemented by the Debtor from time to time as permitted herein and by the Bankruptcy Court.

1.01.39    **Pre-Petition** means prior to the Petition Date.

1.01.40    **Priority Creditor** means a Creditor whose Claim is entitled to priority under 11 U.S.C. § 507.

1.01.41    **Pro-Rata** means proportionately, based on the percentage that the amount of an Allowed Claim within a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

1.01.42    **Property of the Estate** means all property in which the Debtor holds a legal or an equitable interest, including all property described in 11 U.S.C. § 541.

1.01.43    **Rejection Claim** means any Claim arising pursuant to 11 U.S.C. § 502(g) by reason of rejection by the Debtor of an executory contract or unexpired lease pursuant to 11 U.S.C. § 365 or 1123(b)(2).

1.01.44    **Reorganized Debtor** means the Debtor-in-Possession after the Effective Date of the Plan.

1.01.45    **Secured Claim** means any Claim secured by a lien, security interest, or other charge or interest, in property in which the Debtor has an interest to the extent of the value thereof as determined in accordance with 11 U.S.C. § 506(a).

1.01.46    **Secured Creditor** or **Secured Claimant** means any Claimant holding a Secured Claim.

1.01.47    **UST** shall mean the Office of the United States Trustee, and in particular, its office in Austin, Texas for the Bankruptcy Court for the Western District of Texas, Austin Division.

1.01.48    **Voidable Transfer** means all transfers voidable under 11 U.S.C. §§ 544, 545, 547, 548, 549 and/or 550 or any other state or federal transfer.

1.02    **Number and Gender of Words.**  Whenever the singular number is used, it shall include the plural, and the plural shall include the singular, as appropriate to the context.  Words of any gender shall include each other's gender where appropriate.

1.03    **Terms Defined in the Bankruptcy Code.**  Capitalized terms not specifically defined in Section 1.01 of the Plan shall have the definitions given those terms, if applicable, in the Bankruptcy Code.

1.04    **Headings.**  The headings and captions used in the Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

1.05    **Time Computation.**  In computing any time prescribed herein the provision of Fed. R. Bankr. P. 9006(a) shall apply.

## ARTICLE II
### CONCEPT OF PLAN

2.01    **Generally.**  Debtor's Plan is a plan of reorganization. Debtor will continue operating its church ministry in which it was engaged as of the Petition Date, and is being funded from charitable contributions from parishioners and pledged donations.

# ARTICLE III
## PROVISIONS APPLICABLE TO ALL CLAIMS

3.01    **Treatment of Claims.**  This Plan is intended to resolve all Claims against the Debtor and/or property of the Debtor of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to 11 U.S.C. § 502(a).  However, only Allowed Claims will receive treatment afforded by the Plan.  The Plan is designed to insure that Claimants shall receive at least as much pursuant to this Plan as they would receive in a liquidation pursuant to chapter 7 of the Bankruptcy Code.

3.02    **Allowed Claims.**  To receive a distribution under the Plan, a Creditor must have an Allowed Claim.

3.03    **Amount of Claims.**  If the Debtor has scheduled a Claim and has not indicated that such Claim is disputed, contingent, or unliquidated, then the amount scheduled by the Debtor shall control unless the Creditor files a Proof of Claim in a different amount or a party in interest (which may include the Debtor) files an objection to the scheduled claim.  If a creditor files a Proof of Claim, then the amount stated in the Proof of Claim shall control unless a party in interest (which may include the Debtor) files an objection to the Claim.  If a party in interest files an objection to a Proof of Claim or a scheduled claim, then the amount determined by the Court in a Final Order shall control.

3.04    **Allowance of Post-Petition Interest, Fees and Costs.**  Unless otherwise provided by a statute applicable to cases under title 11 or specifically set forth herein, a Claim shall not be entitled to post-petition interest, fees or costs.  An Oversecured Claim shall be entitled to interest at the non-default contract or statutory rate from the date of the Petition until the Confirmation Date.  An Oversecured Claim arising under a contract shall be entitled to post-petition fees and costs if the contract so provides and if an application for allowance of post-petition fees and costs is timely filed and approved by the Court by a Final Order.  A Claim may be determined to be an Oversecured Claim if so designated by the Plan or if determined by the Court by a Final Order.

3.05    **Filing of Claims Arising From Rejection of Unexpired Leases or Executory Contracts.**  Any claims arising from the rejection of unexpired leases or executory contracts shall be filed by the date specified in the order rejecting such lease or contract.  If no date is specified, the date for filing a rejection claim shall be deemed to be the later of twenty-eight (28) days after the Effective Date or twenty-eight (28) days after entry of the order rejecting the lease or contract.

3.06    **Filing of Administrative Expense Claims.**  Any requests for allowance of Administrative Expense Claims which are not listed in Paragraph 4.01.01 below or are listed without an amount or as disputed must be filed within twenty-eight (28) days after the Confirmation Date or shall be barred.

3.07    **Cure Claims.**  Any Cure Claims shall be filed within twenty-eight (28) days after the Effective Date or shall be barred unless otherwise agreed to by the parties.

3.08    **Claims Arising from Avoidable Transfers.**  A person who is found to have received a voidable transfer shall have twenty-eight (28) days following the date from which the order ruling that such transfer is avoidable or approving the settlement of a suit on an avoidable transfer becomes a Final Order in which to file a Claim in the amount of the settlement or the avoided transfer, whichever is less.

3.09    **Filing of Requests for Post-Petition Fees or Costs.**  Any requests for allowance of post-petition fees or costs pursuant to 11 U.S.C. § 506(b) shall be filed within twenty-eight (28) days after the Effective Date or shall be barred.

3.10    **Objections to Claims.**  Any party authorized by the Bankruptcy Code may object to the allowance of a Pre-Petition Claim at any time prior to forty-two (42) days after the Effective Date or twenty-eight (28) days after such claim is filed, whichever is later.  Any Proof of Claim filed after the bar date(s) set by the Court shall be of no force and effect and shall be deemed disallowed.  All Contested Claims shall be litigated to Final Order; *provided, however*, that the Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court.

3.11    **Distributions on Disputed Claims.**  No distributions under this Plan shall be made to the holder of a Claim that is in dispute, unless and until such Claim becomes an Allowed Claim.  When and if a disputed Claim becomes an Allowed Claim, Debtor shall at the next scheduled distribution under the Plan to the Class of Creditors into which the Claim falls pay the newly Allowed Claim a sum sufficient to bring that Claimant *in pari passu* with the other Claimants in the Class.  If a Claim is disputed in whole or in part because the Debtor asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or recoupment, less the amount of the Allowed Claim.  In addition, any party authorized by the Bankruptcy Code may request that the Court estimate any contingent, disputed or unliquidated Claim pursuant to 11 U.S.C. § 502(c) at any time.

## ARTICLE IV
### CLASSIFICATION AND TREATMENT OF CLASSES UNDER THE PLAN

4.01    **Class 1—Administrative Expense Claims**

4.01.01        Administrative claims consist of expenses incurred during the Chapter 11 proceeding prior to confirmation which are approved by the Court and expenses incurred post-petition in operating the Debtor's business.  Estimated future UST fees are also included in this class although payment is not required until the fees are due.  The Debtor is aware of the following Class 1 Administrative Claims:

| CLASS 1 | Name | For | Retainer balance | Estimated claim value |
|---------|------|-----|-----------------|----------------------|
| | Barron & Newburger, P.C. | Legal Services | $ 5,000.00 | $10,000.00 |
| | U.S. Trustee | Fees | | $650.00 per quarter |
| **TOTAL CLASS 1 CLAIMS** | | | | |

4.01.02        No Administrative Expense Claims for professional fees incurred on behalf of the Debtor, Debtor-in-Possession, or Bankruptcy Estate shall be allowed except pursuant to Court order.  The amount owed to Barron & Newburger, P.C. represents professional fees incurred during the bankruptcy and therefore must be approved by the Court. Unless otherwise agreed to by the parties, the administrative claims of Barron & Newburger, P.C. shall be paid upon the later of the date its fees are allowed by the Court or the Effective Date.

4.01.03        Debtor is current on the payment of its fees to the United States Trustee as of the date of the filing of this Plan.  Accrued fees for other quarters during which the case is still open will be paid as they come due.

4.01.04        Unless otherwise agreed to by a particular Creditor, Debtor will pay all Allowed Class 1 Claims on the Effective Date of the Plan or upon entry of a Court order approving a claim for professional fees.

4.01.06        Class 1 is not impaired.

**4.02     Class 2—Allowed Secured Claims of ECCU**

4.02.01        Class 2 consists of the allowed secured claim of ECCU, which is the lienholder on the 4312 Gillis St., Austin, TX property as of the Petition Date.  ECCU has filed a proof of claim in the amount of $282,089.71.

4.02.02        The Debtor shall make payments to the Class 2 creditor based upon a 300 month amortization and a Market Rate of Interest.   The first payment shall be due fourteen (14) days after the Effective Date.    All principal and interest shall become due and payable upon sale of the Debtor's real property or sixty (60) months after the Effective Date, whichever occurs first.    Assuming a claim of $282,089.71, an interest rate of 4.5% and a 300 month amortization, the monthly payments to ECCU shall be $1,567.95 per month.    Under these assumptions, the balloon payment to be made after sixty (60) months will be approximately $252,241.68.    The actual payments will be higher due to the accrual of interest and charges during the pendency of this case.    All Allowed Claims for post-petition interest and fees and charges shall be added to the balance of the debt to be paid under this Plan.

4.02.03    The Class 2 creditor shall retain its liens until its Allowed Claim is paid according to the terms of this Plan.

4.02.04    Class 2 is impaired.

**4.03    Class 3—Allowed Secured Claim of Ally Financial, Inc.**

4.03.01    Class 3 consists of the allowed secured claim of Ally Financial, Inc. which is the lienholder of the 2004 GMC 15 Passenger Van.  Ally Financial, Inc. has filed a proof of claim in the amount of $3656.29.

4.03.02    Debtor will pay the allowed claim in Class 3 based upon a thirty (36) month amortization and a Market Rate of Interest.   The first payment shall be due fourteen (14) days after the Effective Date.   Successive payments shall be due on the 15th day of each month. Assuming an Allowed Claim of $3,656.29, an interest rate of 4.5% and a thirty-six (36) month amortization, the payments to Ally Financial will be $108.76 per month.

4.03.03    The Class 3 creditor shall retain its liens until its claim is paid as provided herein.

4.03.03    Class 3 is impaired.

**4.04    Class 4—General Unsecured Claims**

4.04.01    Class 4 consists of all unsecured, non-priority claims.  A list of these creditors as compiled from Debtor's records and the Proofs of Claim on file with the Court is as follows:

| Creditor | Amount | Source | Disputed? |
|---|---|---|---|
| Bankcard Services | $1,823.78 | Schedules | No |
| FIA Cards Services | $2,250.02 | Proof of Claim | No |
| GE Capital | $8,555.00 | Schedules | Yes |

GE Capital was scheduled as a disputed claim and did not file a proof of claim.   As a result, it is the Debtor's contention that GE Capital does not hold an Allowed Claim.

4.04.02    Creditors with Allowed General Unsecured Claims will be paid the amounts of their Allowed Claims in sixty (60) equal monthly installments without interest beginning fourteen (14) days after the Effective Date.   The estimated monthly payments to the Class 4 creditors are:

| Creditor | Claim Amt. | Payment Amt. |
|---|---|---|
| Bankcard Services | $1,823.78 | $30.40/month |
| FIA Card Services | $2,250.02 | $37.50/month |
| GE Capital | $0 | $0 |

4.04.03        Class 4 is impaired.

4.05        **Class 5—Ownership Interest**

4.05.01        The Debtor is a Texas non-profit corporation.

4.05.02        The Debtor shall continue to operate as a Texas non-profit corporation under the requirements of applicable non-bankruptcy law.

4.05.03        Class 5 is not impaired.


## ARTICLE V
### MEANS FOR IMPLEMENTATION OF PLAN

5.01    **Implementation of the Plan.**  The primary source of payments for the Plan shall be contributions from members of the church.    The Debtor also reserves the right to market and sell its real estate if necessary to pay claims under this Plan.

5.02    **Disbursements Under the Plan.**   The Debtor shall be responsible for all distributions under this Plan.  In connection therewith, the Debtor shall be authorized to employ professionals, including attorneys and accountants to carry out its duties and to compensate such persons without further order of the Court; and (b) reimbursement of out-of-pocket expenses.


## ARTICLE VI
### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    **Assumption of Certain Executory Contracts and Unexpired Leases.**  Debtor assumes the following executory contracts in place as of the Petition Date:  Northern Leasing lease of credit card machine.

6.02    **Rejection of Executory Contracts and Unexpired Leases.**  Except as set forth in Paragraphs 6.0 and 6.02 Debtor shall reject, pursuant to 11 U.S.C. § 1123(b)(2), all Unexpired Leases of Non-Residential Real Property and Executory Contracts not specifically assumed prior to the Confirmation Date.  Debtor at this time does not intend to assume any of the executory contracts in effect as of the Petition Date other than those specified herein.

6.03    **Reservation of Rights.**  Debtor shall have the right to assume or reject, pursuant to 11 U.S.C. § 365, prior to the Confirmation Date, any executory contract or unexpired lease of non-residential real property (to the extent permitted under the Bankruptcy Code).

6.04    **Bar Date for Claims Based on Rejection.**  If the rejection of any executory contract or an unexpired lease by the Debtor results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be

enforceable against the Debtor or their properties or agents, successors or assigns unless a Proof of Claim is filed with the Court and served on the Debtor in the time period set forth in Section 3.05.

6.05 **Limitation on Claims Based on Rejection.**  Any Rejection Claim based upon the rejection of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in accordance with 11 U.S.C. § 502(b)(6) and state law mitigation requirements.  Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtor of any objection to such Claim, if asserted.

## ARTICLE VII
### PROVISIONS FOR THE RETENTION, ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS BELONGING TO THE DEBTOR AND THE ESTATE INCLUDING PREFERENCES AND CONVEYANCES

7.01 **Avoidance Actions.**  There are three types of actions established by the Bankruptcy Code for the benefit of debtors:  actions to recover avoidable preferences under 11 U.S.C. § 547, actions to recover fraudulent conveyances under 11 U.S.C. § 548 and actions to recover unauthorized post-petition transfers under 11 U.S.C. § 549.

7.01.01 **Preferences.**  Section 547 allows a Debtor-in-Possession to recover "voidable preferences"—*to wit,* payments made within ninety (90) days prior to bankruptcy (or within one (1) year if made to an insider) on an antecedent debt while the Debtor is insolvent which allows a creditor to recover more than it would have if the payment had not been made and the Debtor's assets were liquidated under Chapter 7.  Certain payments are protected from recovery as preferences.  These include payments made in the ordinary course of business or upon ordinary business terms and payments representing a substantially contemporaneous exchange.  The following payments were made during the 90 days prior to bankruptcy:

| | | |
|---|---|---|
| 9/1/10 | Ally Financial | $500.00 |
| 10/7/10 | Ally Financial | $500.00 |
| 10/29/10 | Ally Financial | $500.00 |
| | | |
| 9/10/10 | ECCU | $1,412.82 |

Debtor will not seek to recover the payments made to Ally Financial and ECCU as preferential transfers or under any other theory.

7.01.02 **Fraudulent Conveyances and Post-Petition Transfers Made Without Court Approval.**  Section 548 allows a Debtor-in-Possession to recover certain transfers made within one year of Petition Date while the Debtor was insolvent which either was made with fraudulent intent or was made without receiving reasonably equivalent value.  Section 549 allows a Debtor-in-Possession to recover post-petition transfers which were made without court approval.  The Plan preserves and retains Debtor's rights for enforcement under 11 U.S.C.

§§ 548 and 549 for the benefit of the creditors subsequent to the Effective Date.

7.02   **Debtor's Other Bankruptcy and Non-Bankruptcy Causes of Action.**  Except as otherwise released pursuant to the Plan, all other Claims against third parties not previously discussed and all other Claims of any kind or character whatsoever owed to or in favor of the Debtor or the estate to the extent not specifically compromised and released pursuant to this Plan or any agreement referred to and incorporated herein, are hereby preserved and retained for enforcement by the Debtor for the benefit of the creditors subsequent to the effective date.

7.03   **Debtor's Current Intentions.**  At this time, Debtor has made no decision with respect to any of the "bankruptcy causes of action" described herein.

## ARTICLE VIII
## EFFECT OF CONFIRMATION

8.01   **Discharge.**  Pursuant to 11 U.S.C. §§ 524 and 1141(d), the Debtor shall be discharged from its dischargeable debts.

8.02   Confirmation of the Plan shall vest the Property of the Estate in the Reorganized Debtor free and clear of all claims and liens except as expressly provided in the Plan; provided that if the Plan is not substantially consummated, the property of the Estate shall revest in the Estate upon conversion to chapter 7 or entry of an order revoking confirmation of the Plan.

8.03   **Binding Nature of Plan.**  Pursuant to 11 U.S.C. § 1141, the provisions of the confirmed Plan shall bind the Debtor and its Creditors (including the Class 1 creditors) as of the Effective Date, whether or not the Claim or Equity Interest is impaired under the Plan and whether or not such Creditor or Equity Interest Holder has accepted the Plan.  The distributions provided for Claimants shall not be subject to any Claim by another creditor or interest holder by reason of any assertion of a contractual right of subordination.

8.04   **Reliance**.   Debtor and its assigns, successors-in-interest, affiliated entities and their members or shareholders or partners or members, representatives, attorneys, financial advisors, and agents may rely upon the opinions of counsel, certified public accountants, and other experts or professionals employed by the Debtor.

8.05   **Permanent Injunction**.  Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against the Debtor, that could arise directly or indirectly out of a claim against the Debtor, except as expressly permitted by the Plan or 11 U.S.C. § 1141.

## ARTICLE IX
## MODIFICATION OF PLAN

9.01   **Modification to the Plan.**  In accordance with 11 U.S.C. § 1127 and Fed R. Bankr. P. 3019, to the extent applicable, Debtor may modify or amend the Plan prior to the

Confirmation Date, provided that notice and an opportunity for hearing are given to any affected party and the Court finds that the proposed modification or correction does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted the modification in writing.

## ARTICLE X
### POST-CONFIRMATION PROCEDURE

10.01  **Application for Final Decree.**  The Debtor may file an application for final decree as soon as is practicable after the Plan is substantially consummated as that term is defined in 11 U.S.C. § 1101(2) but in no event any later than six months after the Effective Date.

10.02  **U.S. Trustee Matters.**

10.02.01      **Fees.**  The Debtor shall continue to pay U.S. Trustee fees until the case is closed, dismissed or converted.

10.02.02.      **Reports.**  The Debtor shall file post-confirmation reports in the form prescribed by the United States Trustee until the case is closed, dismissed or converted.

## ARTICLE XI
### DEFAULT AND OTHER RELATED PROVISIONS

11.01.  In the event of a default by the Debtor under the Plan (which explicitly includes the failure to pay fees to the United States Trustee as they come due), Creditors or affected parties may exercise any rights granted to them under documents executed to evidence the Plan or any rights available to Creditors under applicable bankruptcy and/or non-bankruptcy law.  In the absence of documents executed to evidence the Plan, this Plan may be enforced as a contract. Notwithstanding any other provision, any Creditor alleging a default shall give the Debtor thirty (30) days' notice and an opportunity to cure before exercising any rights available upon default; provided, that the U.S. Trustee shall retain all statutory rights and remedies granted to it under applicable law.

11.02.  In the event of a default by a Creditor, the Debtor may enforce this plan as a contract in a court of competent jurisdiction.   Default by a creditor shall mean taking an action contrary to the requirements of this Plan.    The Debtor may escrow payments to any Creditor which defaults under the Plan until the default is cured.  The Debtor shall give the Creditor thirty (30) days' notice and an opportunity to cure before exercising this provision.

## ARTICLE XII
### RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan or the Effective Date having occurred, the Court will retain jurisdiction for the following purposes:

12.01 **Allowance of Claims.** To hear and determine the allowability of all Claims upon objections to such Claims.

12.02 **Proceedings Related to Executory Contracts and Unexpired Leases.** To act with respect to proceedings regarding the assumption of any executory contract or unexpired lease of the Debtor pursuant to 11 U.S.C. §§ 365 and 1123 of the Code and Article VI of the Plan.

12.03 **Plan Interpretation.** To resolve controversies and disputes regarding the interpretation of the Plan.

12.04 **Plan Implementation.** To implement and enforced the provisions of the Plan and enter orders in aid of confirmation and implementation of the Plan.

12.05 **Plan Modification.** To modify the Plan pursuant to 11 U.S.C. § 1127 and applicable Bankruptcy Rules, except that no modification shall be made to the Plan that would impair, diminish or affect in any way the rights of the participants of any of the Classes of the Plan without the consent of such class.

12.06 **Adjudication of Controversies.** To adjudicate such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court against the Debtor.

12.07 **Injunctive Relief.** To issue any injunction or to other relief as appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunction or other relief issued under the Plan or in the Confirmation Order.

12.08 **Interpleader Action.** To entertain Interpleader actions concerning assets to be distributed or other assets of the Estate.

12.09 **Correct Minor Defects.** To correct any defect, cure any omission or reconcile any inconsistency or ambiguity in the Plan, the Confirmation Order or any document executed or to be executed in connection therewith, as may be necessary to carry out the purposes and intent of the Plan, provided that the rights of any holder or an Allowed Claim are not materially and adversely affected thereby.

12.10 **Authorization of Fees and Expense.** To review and authorize payment of professional fees incurred prior to the Effective Date.

12.11   **Post-Confirmation Orders Regarding Confirmation.**   To enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified, or vacated.

12.12   **Final Decree.**   To enter a final decree closing the Case pursuant to Fed. R. Bankr. P. 3022.

12.13   **Discharge Order.**   To enter an order discharging Debtor after he has completed his plan payments or otherwise provided for in 11 U.S.C. § 1141(d)(5).

12.14   **Reopening.**   The Court will also retain jurisdiction as set forth above if the case is closed and then reopened.

## ARTICLE XIII
### MISCELLANEOUS PROVISIONS

13.01   **Request for Relief Under 11 U.S.C. § 1129(b).**   In the event any impaired Class shall fail to accept this Plan in accordance with 11 U.S.C. § 1129(a), the Debtor reserves the right to, and does herby request the Court to confirm the Plan in accordance with 11 U.S.C.  §1129(b).

13.02   **Revocation.**   The Debtor reserves the right to revoke and withdraw this Plan at any time prior to the Confirmation Date.

13.03   **Effect of Withdrawal or Revocation.**   If the Debtor revokes or withdraws this Plan prior to the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the debtor.

13.04   **Due Authorization by Creditors.**   Each and every Claimant who elects to participate in the distributions provided herein warrants that it is authorized to accept in consideration of its Claim commitments, agreements or understandings, express or implied, that may defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

13.05   **Entire Agreement.**   The Plan, as described herein, the Confirmation Order, and all other documents and instruments to effectuate the Plan provided for herein, constitute the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersede all prior discussions and documents.

13.06   **Section 1146 Exemption.**   Pursuant to 11 U.S.C. § 1146(c), the issuance, transfer or exchange or any security under this Plan or the making or delivery of any instrument or transfer pursuant to, in implementation of, or as contemplated by this Plan or the transfer of any property pursuant to this Plan shall not be taxed under any federal, state, or local law imposing a

stamp, transfer or similar tax or fee.

13.07    **Provisions Governing Distributions.**

13.07.01        All payments and distributions under the Plan shall be made by the Reorganized Debtor as Plan Agent as indicated.  Any payments or distributions made by the Reorganized Debtor pursuant to the Plan or as may be ordered by the Bankruptcy Court, to the extent delivered by the United States Mail, shall be deemed made when deposited into the United States mail.

13.07.02        Payments of cash to be made by the Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

13.07.03        Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the proofs of claim or proofs of interest filed by such holders (or at the last known addresses of such holders if no proof of claim or proof of interest is filed) unless Claimant files with the Court and serves the Plan Agent with a change of address.  All claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date.  After such date, all unclaimed property shall remain the property of the Debtor and the claim of any other holder with respect to such unclaimed property shall be discharged and forever barred.

13.07.04        Checks issued by the Debtor in respect of allowed claims shall be null and void if not cashed within ninety (90) days of the day the of delivery thereof.  Requests for reissuance of any check shall be made directly to the Debtor by the holder of the Allowed Claim to whom such check originally was issued.  Any claim in respect of such a voided check must be made within ninety (90) days after the date of delivery of such check.  After such date, all claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall become unclaimed property and returned to the Debtor.

13.07.05        No interest shall be paid on any Claim unless, and only to the extent that, the Plan specifically provides otherwise.

13.07.06        All payments will be rounded up to the nearest dollar.  Should the amount of any payment due under the Plan be less than $10.00, the Plan Agent may cumulate payments until the amount to be disbursed is $10.00 or more.

13.08    **Governing Law.**  Unless a rule or law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

13.09    **Post-Confirmation Noticing.**    Subsequent to the Confirmation Date, the Reorganized Debtor shall not be required to give notice to any creditor whose claim has been disallowed or paid in full.  Except for the Application for Final Decree and subject to the

foregoing, if a party is required to give notice in connection with a notice, pleading or application, such notice shall be deemed sufficient if it is sent to:  (a) the Debtor; (b) the attorney for the Debtor; (c) the Plan Agent; (d) the attorney for the Plan Agent; (e) the Office of the United States Trustee; (f) all Secured Creditors to the extent that their claims have not been paid in full; (g) the United States Trustee, (h) unsecured creditors with Allowed Claims.

## ARTICLE XIV
### SUPPORTING DISCLOSURE--GENERAL

### *Identity of the Debtor*

14.01   Debtor filed a voluntary petition for reorganization under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. Section 101, et seq. ("Code") on December 6, 2010, in the United States Bankruptcy Court for the Western District of Texas, Austin Division ("Court"), initiating the above-styled and referenced Case.   Debtor has been acting as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.  Debtor has been operating as a Church at the 4312 Gillis St. location since 1992.

### *Purpose of This Disclosure; Source of Information*

14.02   Debtor submits this disclosure pursuant to 11 U.S.C. § 1125 to all known claimants of Debtor for the purpose of disclosing that information which the Court has determined is material, important, and necessary for Creditors, and equity owners of the Debtor in order to arrive at an intelligent, reasonably, informed decision in exercising the right to vote for acceptance or rejection of the Debtor's Plan.  This Disclosure describes the operations of the Debtor prior to Confirmation.  Any accounting information contained herein has been provided by the Debtor and has been prepared using the cash method of accounting.

### *Explanation of Chapter 11*

14.03   Chapter 11 is the principal reorganization chapter of the Code.  Pursuant to chapter 11, a debtor is authorized to reorganize its business for its own benefit and that of its creditor and equity interest holders.  Formation of a plan of reorganization is the principal purpose of a chapter 11 reorganization case.  A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor.  After a plan of reorganization has been filed, it must be accepted by holders of claims against, or interests in, the debtor.  Section 1125 of the Bankruptcy Code requires full disclosure before solicitation of acceptances of a plan of reorganization.  This disclosure is presented to Claimants to satisfy the requirements of 11 U.S.C. § 1125.

### *Explanation of the Process of Confirmation*

14.04   Even if all classes of claims accept the Plan, its confirmation may be refused by the Court.  Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and, among other things, requires that a plan of reorganization be in the best interests of

Claimants.  It generally requires that the value to be distributed to Claimants may not be less than such parties would receive if the debtor were liquidated under chapter 7 of the Code.

14.05  Acceptance of the Plan by Claimants is important.  In order for the plan to be accepted by each class of claims, the creditors that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims actually voting on the plan in such class must vote for the plan.  Chapter 11 of the Bankruptcy Code does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court.  The plan, however, must be accepted by:  (i) at least the holder of one (1) class of claims by a majority in number and two-thirds (2/3) in amount of those claims of such class actually voting; or (ii) at least the holders of one (1) class of allowed interests by two-thirds (2/3) in amount of the allowed interests of such class actually voting.

14.06  The Court may confirm the Plan even though less than all of the classes of claims and interests accept it.  The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in 11 U.S.C. § 1129(b).

14.07  Confirmation of the Plan discharges a debtor from all of its pre-confirmation debtors and liabilities except as expressly provided for in the plan and 11 U.S.C. § 1141(d).  Confirmation makes the plan binding upon the debtor and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

*Voting Procedures*

14.08  **Unimpaired Classes**.  Claimants in Classes 1 and 5 are not impaired under the Plan.  Such Classes, therefore, are deemed to have accepted the Plan.

14.09  **Impaired Classes**.  Classes 2 through 4 are impaired as defined by 11 U.S.C. § 1124.  Debtor is seeking acceptance of the Plan by Claimants in Classes 2 through 4.  Each holder of an Allowed Claim in these classes may vote on the Plan by completing, dating and signing the ballot sent to each holder and filing the ballot as set forth below.  One ballot will be sent to each Claimant eligible to vote on the plan.  For all classes, the ballot must be returned to Debtor's attorneys as follows:

> Barron & Newburger, P.C
> Attention:     Austin Full Gospel Ballots
> 1212 Guadalupe Street, Suite 104
> Austin, Texas 78701

In order to be counted, ballots must be RECEIVED no later than at the time and on the date stated on the ballot.  Ballots may be submitted by telecopier to (512) 476-9253 or by email to bbarron@bnpclaw.com.

14.10  **Acceptance**.  Ballots that are signed and returned but fail to indicate either an acceptance or rejection will not be counted.

*Best Interests of Creditors Test*

14.11   Section 1129(a)(7) of the Bankruptcy Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.  If 11 U.S.C. § 1111(b)(2) applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan on account of such claim property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.  In order for the Plan to be confirmed, the Court must determine that the Plan is in the best interests of the Debtor's creditors.  Accordingly, the proposed plan must provide the Debtor's creditors with more than they would receive in a chapter 7 liquidation.  Accordingly, since the Plan proposes to pay all Secured Creditors in full and the General Unsecured Creditors with more than they would receive in a chapter 7 liquidation for the reasons discussed below, Debtor believes that the Plan satisfies the requirements of 11 U.S.C. § 1129(a)(7).

*Cramdown*

14.12   The Court may confirm the Plan even though less than all of the classes of claims and interests accept it.  The requirements for confirmation of a plan over the objection of one or more classes of claims or interests, or "cramdown," are set forth in 11 U.S.C. § 1129(b).  Should cramdown become an issue at confirmation in this Case, Debtor requests that the Court determine and enter findings necessary for same—*to wit,* that the Plan does not "discriminate unfairly" and is fair and equitable with respect to any objecting creditor.

14.13   "Fair and equitable" has different meanings with respect to the treatment of secured and unsecured claims.  As set forth in 11 U.S.C. § 1129(b)(2), those meanings are as follows:

14.13.01      **Secured Claims.**  With respect to a class of secured claims, the Plan provides:

(a)(i)   that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the Debtor or transferred to another entity, to the extent to of the allowed amount of such claims; and

(ii)   that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the Effective Date of the Plan, of at least the value of such holder's interest in the estate's interest in such property;

(b)   for the sale, subject to 11 U.S.C. § 363(k), of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (a) and (b) of this subparagraph; or

(c)     The realization by such holders of the "indubitable equivalent" of such claims.

14.13.02     **Unsecured Claims.**  With respect to a class of unsecured claims, the Plan provides:

(a)     that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the Effective Date of the Plan, equal to the allowed amount of such claim; or

(b)     the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the Plan on account of such junior claim or interest in any property.

14.13.03     **Interests.**  With respect to a class of interests, the Plan provides:

(a)     that each holder of an interest of such class receives or retains on account of such interest property of a value, as of the Effective Date of the Plan, equal to the greater of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled or the value of such interest; or

(b)     that the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

14.14  In the event that one or more classes of Impaired Claims or Equity Interests reject the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable with respect to, and does not discriminate unfairly against, any rejecting impaired class of Claims.  The Debtor believes that its unsecured creditors will vote for the Plan. THE PLAN DOES NOT VIOLATE THE ABSOLUTE PRIORITY RULE.  The absolute priority rule requires that prior to equity retaining an interest in the Debtors, senior classes of claims must be paid in full or vote to accept the Plan.  This means that when the unsecured creditors are not being paid in full, Debtor's shareholders or equity interest holders (of which there are none here) cannot retain their stock in the Debtor or receive any financial benefit under the Plan because such retention or receipt violates the absolute priority rule and may make the Plan nonconfirmable by the Court.    In this case, the Debtor does not have equity security holders so that the absolute priority rule is not implicated.

### *Definition of Impairment*

14.15  "Impaired" as it refers to a class of claims or equity interests is defined in Section 1.01.29, *supra*, which tracks the language of 11 U.S.C. § 1124 , which sets forth the elements for determining whether a claim or equity interest is impaired under a plan of reorganization.

### *Classification and Treatment of Claims and Interests*

14.16   The Plan classifies Claims separately in accordance with the Bankruptcy Code and provides different treatment for different classes of Claims.

14.17   Only holders of Allowed Claims are entitled to receive distributions under the Plan.  "Allowed Claim" is defined in Section 1.01.03, *supra*.

14.18   In accordance with the Plan, unless otherwise provided in the Plan or the Confirmation Order, the treatment of any Claim under the Plan will be in full satisfaction, settlement, release, and discharge of and in for each and every Claim.

### *Requirements for Confirmation of the Plan*

14.19   At the confirmation hearing, the Bankruptcy Court must determine whether the Bankruptcy Code's requirements for confirmation of the Plan have been satisfied, in which event it will enter an order confirming the Plan.  As set forth in 11 U.S.C. § 1129, these requirements are as follows:

14.19.01        The Plan complies with the applicable provisions of the Bankruptcy Code.

14.19.02        The proponent of the Plan complies with the applicable provisions of the Bankruptcy Code.

14.19.03        The Plan has been proposed in good faith and not by any means forbidden by law.

14.19.04        Any payment made or promised by the Debtor, by the plan proponents, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with, the Case, or in connection with the Plan and incident to the Case, has been approved by, or is subject to approval of the Bankruptcy Court as reasonable.

14.19.05        The proponent of the Plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a joint plan with the Debtor, or a successor under the Plan.  Additionally, the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and

14.19.06        The proponent of the Plan has disclosed the identity of any insider that will be employed or retained by the reorganized Debtor, and the nature of any compensation for such insider.

14.19.07        Any governmental regulatory commission with jurisdiction, after confirmation of the Plan, over the rates of the Debtor has approved any rate change provided for in the Plan, or such rate change is expressly conditioned on such approval.

14.19.08    With respect to each class of claims or interests, (a) such class has accepted the Plan; or (b) such class is not impaired under the Plan.

14.19.09    With respect to each Impaired Class of claims of interests, each holder of a claim or interest of such Class has (a) accepted the Plan; or (b) will receive or retain under the Plan on account of such claim or interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated on such date under chapter 7 of the Bankruptcy Code on such date; or (c) if 11 U.S.C. § 1111(b)(2) applies to the claims of such class, the holder of a Claim of such class will receive or retain under the Plan on account of such claim property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interests in the estate's interest in the property that secures such Claims.

14.19.10    Except to the extent that the holder of a particular Claim has agreed to a different treatment of such claim, the Plan provides that with respect to a Claim of a kind specified in 11 U.S.C. § 507(a)(2) or 507(a)(3), on the Effective Date of the Plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such Claim.

14.19.11    Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the Plan provides that with respect to a claim of a kind specified in 11 U.S.C. §§ 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) on the Effective Date of the Plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim.

14.19.12.    Except to the extent that the holder of a particular claim has agreed to a different treatment of such Claim, the Plan provides that with respect to a claim of a kind specified in 11 U.S.C. § 507(a)(8), the holder of a Claim will receive on account of such claim deferred cash payments, over a period not exceeding five (5) years after the date of assessment of such Claim, of a value, as of the Effective Date of the Plan, equal to the allowed amount of such Claim.

14.19.13    If a class of Claims is impaired under the Plan, at least one class of Claims that is impaired has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim of such class.

14.19.14    Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

14.19.15    In a case in which the Debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the Plan the value, as of the effective date of the Plan, of the property to be distributed under the Plan on account of such claim is not less than the amount of such claim; or the value of the property to be distributed under the Plan is not less than the projected disposable income of the Debtor (as defined in section (1325(b)(2))) to be received during the 5-year period beginning on the date that the first payment is due under the

Plan, or during the period for which the Plan provides payments, whichever is longer.

14.19.16     All fees payable under 20 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on confirmation of the Plan, have been paid or the Plan provides for the payments of all such fees on the effective date of the Plan.

14.19.17     The Plan provides for the continuation after its Effective Date of payment of all retiree benefits, as that term is defined in 11 U.S.C. § 1114, at the level established pursuant to 11 U.S.C. § 1114(e)(1)(B) or (g), at any time prior to confirmation of the Plan, for the duration of the period the Debtor has obligated itself to provide such benefits.

14.19.18     All transfers of property under the Plan shall be made in accordance with any applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

14.19.19     The Debtor believes that the Plan satisfies all the statutory requirements of chapter 11 of the Bankruptcy Code, that the Debtor has complied with or will have complied with all the requirements of chapter 11, and that the Plan is proposed in good faith.

14.20   At the Confirmation Hearing, the Bankruptcy Court will determine whether holders of Allowed Claims or Allowed Equity Interests would receive greater distributions under the Plan than they would receive in a liquidation under chapter 7.


## ARTICLE XV
### REPRESENTATIONS

15.01   These Disclosures are provided pursuant to 11 U.S.C. § 1125 to all of the Debtor's known Creditors and other parties in interest in connection with the solicitation of acceptance of Plan, as amended or modified.  The purpose of these Disclosures is to provide information as will enable a hypothetical, reasonable investor, typical of the holders of Claims, to make an informed judgment in exercising its rights either to accept or reject the Plan.

15.02   The information contained in these Disclosures has been derived from information submitted by the Debtor, unless specifically stated to be from other sources.

15.03   No representations concerning the Debtor are authorized by the Debtor other than those set forth in these Disclosures.  The Debtor recommends that any representation or inducement made to secure your acceptance or rejection of the Plan which is not contained in this Disclosure should not be relied upon by you in reaching your decision on how to vote on the Plan.  Any representation or inducement made to you not contained herein should be reported to the attorneys for Debtor who shall deliver such information to the Court for such action as may be appropriate.

15.04   ANY BENEFITS OFFERED TO CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR

DISAPPROVED BY THE UNITED STATES SECURITIES AND EXHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES.  IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THESE DISCLOURES OR UPON THE MERITS OF THE PLAN.  ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

15.05  THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.  FOR THIS REASON AND BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE.  THE STATEMENTS CONTAINED IN THIS DISCLOSURE ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

15.06  THE APPROVAL BY THE COURT OF THESE DISCLOSURES DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

15.07  DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY TO ULTIMATELY RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS.  CONSEQUENTLY, DEBTOR URGES THAT CLAIMANTS ACCEPT THE PLAN AND CAST THEIR VOTES FOR THE PLAN.

## ARTICLE XVI
### INFORMATION CONCERNING THE DEBTOR

16.01  **Overview of the Debtor.**  Debtor is a Church organized as a non-profit corporation.  Its business at this time consists primarily of soliciting charitable contributions and pledged donations.   The Debtor serves approximately one hundred members.

16.02  **Management of the Debtor.**

The Debtor is a Texas non-profit corporation.   It is managed by a five person Board of Directors.   The current directors are:

John W. Horne – Pastor & President

Emanuel Bell – Trustee

Meranda Sellers – Secretary & Treasurer

Barbara J. Horne – Co-Pastor/Educational Aide

Choya Morrison – Secretary/Treasurer

The Debtor will continue to be managed by a Board of Directors under the Plan of Reorganization.

### 16.03   Significant Transactions Prior to Bankruptcy.

Bishop John W. Horne established Austin Full Gospel Holy Temple as an unincorporated association in June of 1985.   Austin Full Gospel Holy Temple was incorporated as a Texas non-profit corporation on February 28, 2001.   In September 2010, the church began operating under the name Restoration Temple of Deliverance.    However, the legal entity continues to Austin Full Gospel Holy Temple.

On September 1, 1992, the Debtor acquired real property located at 4312 Gillis Road, Austin, TX  78745.    The original structure on the building was a motorcycle shop and was converted into a church.

In 2003, the building on the Debtor's property was destroyed by fire.    Using a combination of insurance proceeds and financing from ECCU, the Debtor constructed a 6,000 square foot facility.

On December 14, 2004, the Debtor signed a promissory note with ECCU..  Under the terms of the note, the Debtor was to pay ECCU 59 monthly payments of $1699.44 each and one last balloon payment on January 1, 2010.

On October 25, 2009, the note was modified to increase the principal amount to $277,000.00, to extend the maturity to October 10, 2010 and to reduce the payments to interest only at a rate of 6.125%.    The interest only payments equaled approximately $1,413.85 per month.

The note matured on October 10, 2010.   At the time, the Debtor was current in making the interest only payments.   However, the Debtor was not able to negotiate an extension with ECCU.

ECCU posted the Debor's real property for a foreclosure scheduled for December 7, 2010.  In order to prevent foreclosure of the Church grounds and sanctuary, Debtor filed for protection under chapter 11 of title 11, United States Code, on December 6, 2010.

### 16.03   Significant Events Since Filing Bankruptcy.

The Debtor filed its chapter 11 case on December 6, 2010.

On December 14, 2010, the Court entered an *Interim Order On Emergency Motion*

*Pursuant to 11 U.S.C. § 363 For Authority to Use, Sell, or Lease Cash Collateral In the Ordinary Course, Provide Adequate Protection And For Preliminary Hearing,* granting Debtor the ability to use cash collateral to facilitate its ordinary and necessary business expenses.

The First Meeting of Creditors was conducted on January 25, 2011.

On June 23, 2011, ECCU filed a Motion to Dismiss or Convert Debtor's bankruptcy case. That motion is currently set for hearing on September 16, 2011.

## ARTICLE XVII
### FINANCIAL RESULTS

**17.01   Financial Results Prior to Bankruptcy.**

The following table summarizes the Debtor's financial results for years 2008-2010:

| | 2008 | 2009 | 2010 |
|---|---|---|---|
| Income | $165,229 | $151,481 | $160,836 |
| | | | |
| Expenses: | | | |
| Advertising | $1,760 | $616 | $1,270 |
| Automobile-Van | $5,422 | $5,605 | $5,576 |
| Bank Charges | $587 | $471 | $1,027 |
| Benevolent Offering | $7,437 | $4,029 | - |
| Books and Subscriptions | $368 | $592 | $1,031 |
| Church Mortgage | $23,112 | $17,584 | $12,488 |
| Contributions/ Donations | $12,646 | $12,964 | $9,956 |
| Credit Cards | $1,553 | $1,348 | $1,106 |
| Car Allowance | $1,751 | - | - |
| Housing Allowance | $24,802 | $24,297 | $25,721 |
| Personal Allowance | $459 | $3,661 | $7,009 |
| Insurance | $4,810 | $6,629 | $8,820 |
| Legal | | | $5,315 |
| Miscellaneous | $30 | $519 | $3,810 |
| Organization Fees/ Dues | $5,500 | $4,700 | $2,732 |
| Pastoral Offering | $38,600 | $32,200 | $32,658 |
| Program Costs | $3,503 | $1,378 | $8,276 |
| Rental/Lease | $5,686 | $3,720 | $1,933 |
| Repairs/Maint. | $9,276 | $4,299 | $6,792 |
| Retirement Fund | $1,050 | $1,718 | $2,169 |
| Supplies | $2,351 | $2,442 | $4,877 |
| Telephone | $3,085 | $4,032 | $2,914 |

| | | | |
|---|---|---|---|
| Travel | $2,515 | $3,046 | $4,471 |
| Utilities | $6,044 | $5,441 | $6,076 |
| Total | $164,743 | $141,921 | $155,791 |
| | | | |
| Net Operating Income | $487 | $9,560 | $5,045 |

### 17.02   Financial Results During Bankruptcy.

The following chart summarizes the Debtor's personal income and expense during the bankruptcy proceeding as reported on its Monthly Financial Reports:

| Month | Total Revenues | Operating Expenses | Cash Profit for the Month |
|---|---|---|---|
| Dec. 2010 | $10,689.79 | $10,196.99 | $492.80 |
| Jan.  2011 | $13,385.60 | $8913.36 | $4472.24 |
| Feb.  2011 | $14,343.32 | $13,154.12 | $1189.20 |
| Mar.  2011 | $10,434.27 | $11,694.93 | ($1260.66) |
| Apr.  2011 | $8,797.70 | $8055.19 | $742.51 |
| May 2011 | $8,722.10 | $9240.89 | ($518.79) |
| June 2011 | $10,304.22 | $9732.65 | $571.37 |
| July 2011 | $8,517.00 | $8,281.61 | $235.39 |

### 17.03   Projected Financials After Bankruptcy.

The Debtor projects the following annual income and expenses after bankruptcy:

| Income | $150,800 |
|---|---|
| | |
| Expenses: | |
| Advertising | $650 |
| Automobile-Van | $1,305 |
| Bank Charges | $475 |
| Benevolent Offering | $4,000 |
| Books         and Subscriptions | $600 |
| Church Mortgage | $18,815 |
| Contributions/ Donations | $13,000 |
| Credit Cards | $815 |
| Car Allowance | - |
| Housing Allowance | $24,000 |
| Personal Allowance | $3,600 |

| | |
|---|---:|
| Insurance | $6,600 |
| Miscellaneous | $500 |
| Organization Fees/ Dues | - |
| Pastoral Offering | $26,400 |
| Program Costs | $1,400 |
| Rental/Lease | $3,725 |
| Repairs/Maint. | $4,300 |
| Retirement Fund | - |
| Supplies | $2,450 |
| Telephone | $4,000 |
| Travel | $3,000 |
| Utilities | $6,000 |
| Total | $125,635 |
| | |
| Net Operating Income | $25,165 |

The Debtor's projections begin with its actual income and expenditures during 2009. This year was chosen because the Debtor's income during 2009 was the lowest of the past three full years. As a result, the Debtor believes that it provides a conservative basis for projections. Actual expenditures were used with the exception of payments to creditors, pastoral offering and retirement fund. For the categories of Automobile-Van, Church Mortgage and Credit Cards, the proposed payments under the Plan were used. Bishop Horne has reduced his salary by $200.00 per month to $2,200.00 per month. This reduced amount is included in the projections. Finally, the church has suspended making retirement contributions for Bishop Horne and has eliminated the expense item for organization fees/dues. As a result, these expenses have been eliminated.

The Debtor's actual income during the bankruptcy proceeding has averaged $10,649.25 or $127,791.00 on an annualized basis. The Debtor believes that uncertainty associated with its bankruptcy proceeding has reduced giving during the bankruptcy proceeding. If a plan is confirmed, Bishop Horne anticipates that giving will increase. Even if giving does not reach 2009 levels, the budget has a margin for error of $25,165. If giving levels remain at the levels actually received during the bankruptcy case, the Debtor will be able to make its plan payments with approximately $2,000 remaining.

## ARTICLE XVIII
## ANALYSIS AND VALUATION OF PROPERTY

18.01 **Real Property.**

The following chart lists the Debtor's real property as of the filing date and as of the date of the Plan:

| Property | Scheduled Value | Appraised Value |
|---|---|---|
| 4312 Gillis St. Austin, TX 78745 | $338,170.00 | $700,000 |

The Debtor used the Travis Central Appraisal District value in its schedules. ECCU has stated that the appraised value of the property is $700,000.00. The property is located adjacent to Ben White Boulevard and contains improvements constructed in 2004. These factors support the higher valuation contained in the appraisal.

18.02 **Personal Property.**

The Debtor currently has the following personal property assets:

| | |
|---|---|
| Debtor's checking & savings account | $1,864.95 |
| Inventory (furnishings for sanctuary and office) | $54,950.00 |
| Automobiles, trucks, trailers, and other vehicles and accessories (2004 GMC 15 Passenger Van) | $10,000.00 |

18.03 **Liquidation Value of Assets.**

A Chapter 11 Plan must pay creditors more than they would receive in a chapter 7 liquidation. Debtor's counsel has prepared the following liquidation analysis.

| Asset | Gross Value | Liquidation Percentage | Less Liens | Net Liquidation Value |
|---|---|---|---|---|
| 4312 Gillis St. Austin, TX 78745 | $700,000 | 50% | $ 282,090 | $ 67,910 |
| Cash & Accounts | $1,865 | 100% | $ 0.00 | $1,865 |
| Inventory | $ 54,950 | 10% | $ 0.00 | $ 5,495 |
| 2004 GMC Savana | $ 10,000 | 50% | $ 3,656 | $1,344 |
| Total | | | | $76,614 |
| | | | | |
| Less Chapter 7 Trustee Commission | | | | $7,081 |
| Less Chapter 7 Trustee Attorney Fees | | | | $500 |
| Less Chapter 7 Trustee Accounting Fees | | | | $500 |

| | | |
|---|---|---|
| Less Chapter 11 Attorney's Fees | | $5,000 |
| Less U.S. Trustee Fees | | $650 |
| | | |
| Funds Available to Unsecured Creditors | | $62,883 |
| | | |
| Unsecured Creditors | | $4,074 |
| | | |
| Percentage | | 100 % |

The Liquidation Analysis begins with the asset values contained above and adjusts them based on the expected recovery in a chapter 7 liquidation.

The Debtor's Liquidation Analysis reflects that in a chapter 7 liquidation, unsecured creditors would receive payment of their claims.

## ARTICLE XIX
### FEASIBILITY OF THE PLAN AND RISK TO CREDITORS

19.01   Feasibility of the Plan and Risk to Creditors measures the likelihood that creditors will receive the payments promised to them.  In this case, a significant risk factor for creditors is the fact that the church depends on voluntary contributions to fund its activities.  The Debtor has solicited pledges from its members for debt reduction.  The pledges total $27,000.00.  However, the significant equity in the Debtor's real property provides an alternative source of funding for payment of creditors if contributions are not sufficient.

## ARTICLE XX
### ALTERNATIVES TO DEBTOR'S PLAN

20.01   The two known alternatives to Debtor's Plan are:  (i) conversion to chapter 7 liquidation; and (ii) dismissal of the bankruptcy case.

20.02   **Conversion.**  Debtor does not believe that conversion to chapter 7 is in the best interest of creditors.  Conversion will result in higher administration expenses as reflected in Section 18.03 and significant delay in disbursements to creditors.  Moreover, a liquidation would drastically reduce the funds available to the Debtor to continue its charitable mission.

20.03   **Dismissal.**  Debtor also does not believe that dismissal of the Case is in the best interest of creditors.  In the event of dismissal, ECCU would likely foreclose upon the Debtor's property leaving few assets available for other creditors.

## ARTICLE XXI
### RELATIONSHIP OF DEBTOR WITH AFFILIATES

21.01   Under the Bankruptcy Code, the term affiliate refers to an entity that directly or

indirectly controls with power to vote twenty (20) percent or more of the securities of the Debtor, a corporation twenty (20) percent or more of whose outstanding voting securities are directly or indirectly controlled by the Debtor, a person whose business is operated under a lease or operating agreement by a Debtor or a person substantially all of whose property is operated under an operating agreement with the Debtor or an entity that operates the business or substantially all of the property of the Debtor under a lease or operating agreement.

21.02   Under this definition, Debtor does not have any affiliates.

## ARTICLE XXII
### TAX CONSEQUENCES

22.01   Implementation of the Plan may result in federal income tax consequence to holders of Claims, to the Equity Interest Holders, and to the Debtor.  Tax consequences to a particular Creditor or Equity Interest Holder may depend on the particular circumstances or facts regarding the claim of the Creditor or the interests of the Equity Interest Holder.  **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL LAW.**

## ARTICLE XXIII
### PENDING AND POTENTIAL LITIGATION

23.01   There is no pending litigation at this time.

23.02   Article VII discusses potential litigation.

## ARTICLE XXIV
### SOLICITATION OF VOTES

24.01   The Debtor has devoted substantial effort to preparation of its Plan of Reorganization.  The Debtor believes that the Plan represents a fair adjustment of its relationship with the creditors.  The Debtor believes that the Plan is superior to the alternatives.  Therefore, the Debtor requests that all parties approve the Plan of Reorganization.

DATED:      August 23, 2011


                     Respectfully submitted,

                     AUSTIN FULL GOSPEL HOLY TEMPLE

                     By:
                             JOHN W. HORNE, PRESIDENT


                     **BARRON & NEWBURGER, P.C.**
                     1212 Guadalupe, Suite 104
                     Austin, Texas  78701
                     (512) 476-9103 Ext. 220
                     (512) 476-9253 (Facsimile)


                     By:     */s/Stephen W. Sather*
                             Stephen W. Sather
                             State Bar No. 17657520
                             Barbara M. Barron
                             State Bar No. 01817300

                     ATTORNEYS FOR DEBTOR-IN-POSSESSION